**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| EFRAIN HERNANDEZ-ADORNO, *individually and on behalf of all others similarly situated*, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:21-cv-1519-DCN |
| vs. | ) ) | **ORDER** |
| LMD & ASSC., LLC, | ) ) | |
| Defendant. | ) ) ) | |

The following matter is before the court on defendant LMD & Assc., LLC's ("LMD") motion to dismiss, ECF No. 7. For the reasons below, the court grants the motion.

## I.   BACKGROUND

In September 2017, Hurricanes Irma and Maria swept through the northeast Caribbean, bringing devastation to its islands, including the United States territory of Puerto Rico. As part of its relief efforts, the United States contracted Louis Berger, a New Jersey architecture and engineering firm, to perform repairs and rebuild infrastructure in Puerto Rico shortly after the storms. Louis Berger subcontracted many of its obligations under those contracts to various subcontractors, including the defendant in this action, LMD. In turn, those subcontractors hired workers in Puerto Rico to perform the contracted services. On December 14, 2018, one of those workers, Ivan Ojeda ("Ojeda"), filed an action in the District of New Jersey against Louis Berger and two of its subcontractors, Kennett Consulting and Kallberg Industries. <u>Ojeda v. Louis Berger Group, Inc.</u>, No. 2:18-cv-17233-KM-JBC (D.N.J. 2018) (the "New Jersey

1

Action").  Ojeda filed the New Jersey Action as a collective and class action on behalf of

similarly situated workers, asserting claims under the Fair Labor Standards Act, 29

U.S.C. § 201, et seq. ("FLSA"), and various Puerto Rico worker protection laws under

Title 29 of the Puerto Rico Code Annotated, 29 L.P.R.A. § 1, et seq.  ECF No. 13-1.

Ojeda's complaint specifically alleges that the defendants engaged in a slew of illegal pay

practices, including improperly characterizing workers as independent contractors, failing

to properly compensate for overtime work, and unlawfully deducting wages, among

others.  Id.

On March 19, 2019, Ojeda filed an amended complaint, joining a second named

plaintiff and several additional defendants, including LMD.  ECF No. 13-2.  Shortly

thereafter, four of the subcontractor defendants, including LMD, filed motions to dismiss

for lack of personal jurisdiction.  Before resolving the motions, the district court ordered

the relevant parties to engage in jurisdictional discovery.  During that period, on June 11,

2020, the plaintiffs filed a second amended complaint, adding additional named plaintiffs,

such that the lawsuit included at least one named plaintiff who performed work for each

defendant.  Plaintiff Efrain Hernandez-Adorno ("Hernandez-Adorno") was joined as the

plaintiff who performed work for LMD.  On March 11, 2021, the New Jersey district

court concluded that it lacked jurisdiction over LMD, Ojeda v. Louis Berger Group, 2021

WL 941875 at *15 (D.N.J. March 21, 2021), and subsequently transferred the claims

against LMD, a South Carolina limited liability company with its principal place of

business in South Carolina, to this court, No. 2:18-cv-17233 at ECF No. 339.

Accordingly, on May 19, 2021 Hernandez-Adorno—pursuant to the New Jersey

Action's transfer order—filed with this court the instant collective and class action

against LMD on behalf of himself and all others similarly situated (collectively, "plaintiffs"). ECF No. 1, Compl. Like the New Jersey Action that preceded it, this action asserts claims under the FLSA and Title 29 of the Puerto Rico Code Annotated. With respect to the Puerto Rico law claims, plaintiffs specifically assert that LMD: (1) failed to properly pay overtime wages in violation of 29 L.P.R.A. § 271, id. ¶ 64; (2) made unlawful wage deductions in violation of § 171, id. ¶ 64; (3) failed to make timely wage payments in violation of § 173, id. ¶ 67; (4) wrongfully discharged employees in violation of § 185, id. ¶ 68; (5) failed to pay minimum wage in violation of § 250, id. ¶ 69; (6) failed to allot meal hours in violation of § 283, id. ¶ 71; and (7) failed to pay Christmas bonuses in violation of § 501, id. ¶ 72. On June 9, 2021, LMD filed a motion to dismiss for failure to state a claim, arguing that plaintiffs' Puerto Rico law claims are barred by the applicable statute of limitations. ECF No. 7. On June 30, 2021, Hernandez-Adorno responded to the motion. ECF No. 13. And on July 7, 2021, LMD replied. ECF No. 20. The court held a hearing on the motion on July 27, 2021. ECF No. 23. Accordingly, the motion is now ripe for the court's review.

## II.  STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the

court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III.  DISCUSSION

In its motion, LMD argues that plaintiffs' Puerto Rico law claims "are time[-]barred as they are subject to a one-year statute of limitations [pursuant to] 29 L.P.R.A. § 250j."  ECF No. 7-1 at 5.  Plaintiffs submit several arguments against dismissal, each of which the court addresses in turn.

Before delving into the substance of those claims, however, the court clarifies one initial matter raised by the parties' papers.  In its motion to dismiss, LMD seeks dismissal of plaintiffs' Puerto Rico law claims and supplies detailed and well-reasoned arguments in support.  Muddying the waters, though, LMD states in a summary of its argument, "Additionally, the claims under FLSA set forth by Edgardo Soto Infante ("Soto") and Alfonso Molina Mannero ("Molina")—the other two individuals mentioned in the Complaint—are time-barred because they have never filed opt-in notices."  ECF No. 7-1 at 4 (emphasis omitted).  Despite this strong stance, LMD offers no accompanying law or set of facts which might support the court's dismissal of Soto and Molina's FLSA claims and fails to otherwise mention that position at all in subsequent filings with the court. LMD concludes its motion by seeking dismissal of "all Puerto Rico law claims against

LMD," without any mention of plaintiffs' FLSA claims.  Id. at 6.  In response to questions from the court at the hearing, LMD confirmed that its motion only seeks dismissal of plaintiffs' Puerto Rico law claims, not their FLSA claims.  Thus, the court considers only those claims in resolving LMD's motion to dismiss.

### A.  Untimeliness

LMD's motion asserts that plaintiffs' Puerto Rico law claims are time-barred by the applicable statute of limitations.  Disagreeing on several fronts, plaintiffs first respond to LMD's statute-of-limitations argument with an untimeliness argument of their own, contending that LMD cannot assert a statute-of-limitations defense in a successive motion to dismiss under Fed. R. Civ. P. 12.  Plaintiffs explain that because LMD filed a motion to dismiss for lack of personal jurisdiction in the New Jersey Action, it is procedurally barred from filing a successive motion to dismiss on statute-of-limitations grounds.  Like other courts in this circuit, the court chooses substance over form and therefore rejects plaintiffs' position.

Rule 12(g)(2) precludes a party from making a successive Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion," except as provided for in Rule 12(h)(2) or (3).  Rule 12(h)(2) provides that a party may raise "failure to state a claim upon which relief can be granted" as a defense in a successive Rule 12 motion, but that it must do so in a pleading, "by a motion under Rule 12(c)," or at trial.  Stated less enigmatically, where a party makes a Rule 12(b) motion for dismissal and omits its failure-to-state-a-claim defense from that first motion, it may subsequently assert that defense only in a pleading, a Rule 12(c) motion for judgment on the pleadings, or at trial.  However, as several courts have realized, denying

a Rule 12(b)(6) motion for failure to state a claim on the basis that it should have been filed under Rule 12(c) often needlessly elevates the form of the rules over their substantive purpose.

As the Middle District of North Carolina noted, Rules 12(g) and (h) are "intended to eliminate unnecessary delays at the pleading stage of a case by avoiding the piecemeal consideration of pretrial motions."[1] Tatum v. R.J. Reynolds Tobacco Co., 2007 WL 1612580, at *6 (M.D.N.C. May 31, 2007), rev'd sub nom. on other grounds, Tatum v. RJR Pension Inv. Comm., 761 F.3d 346 (4th Cir. 2014). Declining to consider a party's failure-to-state-a-claim defense because it was filed under Rule 12(b)(6) rather than Rule 12(c) makes little sense in most cases, given that the court resolves both motions under an identical standard. Deutsche Bank Nat. Tr. Co. v. I.R.S., 361 F. App'x 527, 529 (4th Cir. 2010) ("A [ ] Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)."). Accordingly, courts in this circuit "have interpreted the bar on successive Rule 12 motions 'permissively and have accepted subsequent motions on discretionary grounds.'" Nance v. Rowan-Salisbury Bd. of Educ., 2019 WL 1437212, at *1 (M.D.N.C. Feb. 27, 2019) (quoting Superior Performers, Inc. v. Ewing, 2015 WL 3823907, at *2–3 (M.D.N.C. June 19, 2015) and citing F.T.C. v. Innovative Mktg., Inc., 654 F. Supp. 2d 378, 383 (D. Md. 2009)). Courts in this district have opted for a similar resolution, construing successive Rule 12(b)(6) motions to dismiss as Rule 12(c) motions for judgment on the pleadings. See Quinn v. SC Dep't of Transportation, 2019 WL 1780530, at *3 (D.S.C. Mar. 29, 2019), adopted,

---

[1] In this litigation, originally filed in New Jersey on December 14, 2018, it seems that ship has sailed.

2019 WL 1773548 (D.S.C. Apr. 23, 2019) ("[T]he Court considers the [Rule 12(b)(6)] motion as a Rule 12(c) motion for judgment on the pleadings, raising the defense of failure to state a claim upon which relief can be granted.").

Doing the same here makes good sense. For one, LMD could have brought its statute-of-limitations defense in a Rule 12(c) motion instead of a Rule 12(b)(6) motion because the pleadings in this case are now closed. If it had, only the motion's title would be different. Further, all the facts that the court needs to resolve LMD's defense are currently before it and undisputed. Declining to resolve LMD's statute-of-limitations defense now would delay its resolution without good reason, wasting the court's, as well as the parties', time and resources. See Nance, 2019 WL 1437212, at *1 ("Moreover, failure to consider [the defense] at this stage would amount to needless delay and a waste of judicial and party resources."). Moreover, at the hearing on the motion, plaintiffs' counsel conceded that the court had the authority to construe LMD's motion as a motion for judgment on the pleadings. Finding that the most sensible approach, the court construes LMD's Rule 12(b)(6) motion to dismiss as a Rule 12(c) motion for partial judgment on the pleadings and resolves LMD's statute-of-limitations defense here and now.

### B. The Applicable Statute of Limitations

Turning from procedure to substance, the court's first task is to determine the appliable statute of limitations—an issue the parties hotly dispute. Each of plaintiffs' Puerto Rico law claims arises from laws within Title 29 of the Puerto Rico Code Annotated. LMD contends that 29 L.R.P.A. § 250j applies to all wage claims arising

under Title 29 and therefore to each of plaintiffs' Puerto Rico law claims. That statute

provides:

> An employee's suit to claim wages against his employer under this chapter,
> approved or to be approved pursuant to the provisions of this chapter or
> under any contract or law, shall prescribe within a term of one (1) year. The
> statute of limitation of this action shall be counted from the time that the
> employee ceased to work for the employer.

Additionally, LMD points out, 29 L.R.P.A. § 185*l* specifically provides that claims for

unlawful discharge "shall prescribe after one (1) year has elapsed from the effective date

of the discharge." According to the complaint, Hernandez-Adorno stopped working for

LMD in January 2018. Compl. ¶ 8. Under §§ 250j and 185*l*, LMD therefore argues, he

had until January 2019 to assert his Puerto Rico law claims. Because plaintiffs did not

assert any claims against LMD in this action until March 2019, LMD concludes,

plaintiffs' claims are time-barred.

In response, plaintiffs first contend that § 250j does not provide the appliable

statute of limitations for all claims arising from Title 29 and therefore does not bar most

of their Puerto Rico law claims. As an initial matter, it cannot be disputed that §§ 250j

and 185*l* provide the applicable limitations period for at least some of plaintiffs' Puerto

Rico law claims. Section § 250j undoubtedly sets the limitations period for claims

arising from Chapter 11, which includes protections related to minimum wage, vacation,

and sick leave. Likewise, § 185*l* undoubtedly sets the limitations period for Chapter 9,

which protects against unlawful discharges. Plaintiffs assert that LMD violated minimum

wage laws under § 250, compl. ¶ 69, and committed unlawful discharges under § 171, id.

¶ 68. Plaintiffs acknowledged at the hearing that §§ 250j and 185*l* provide the relevant

statutes of limitations for their minimum wage and unlawful discrimination claims.

Therefore, those claims are time-barred.  However, plaintiffs disagree that their remaining Puerto Rico law claims are likewise barred.

Plaintiffs submit two arguments in support of their contention that § 250j does not set the applicable limitations period for the remainder of their Puerto Rico law claims.[2] First, plaintiffs point to the statutory language, which states that the one-year limitations period applies to claims made "under this chapter[.]"  29 L.P.R.A. § 250j (emphasis added).  Plaintiffs explain that "this chapter" refers to Chapter 11, one of the 24 chapters within Title 29.  Therefore, they conclude, the plain language of the statute applies the limitations period to claims arising under Chapter 11, not the entirety of Title 29.  In reply, LMD argues that plaintiffs fail to read the statute comprehensively, noting that the statute applies the limitations period to claims made "under this chapter" and to those "approved or to be approved pursuant to the provisions of this chapter or under any contract or law[.]"  Id. (emphasis added).

The court agrees with LMD that a one-year limitations period in § 250j applies to all wage claims under Title 29 for two reasons.  First, the ambiguity of § 250j's language is resolved by the overwhelming and explicit evidence of the Legislative Assembly of Puerto Rico's intent.  Reading the language of the statute in its entirety, the court concludes that both parties' interpretations offer reasonable constructions: "An employee's suit to claim wages against his employer under this chapter, approved or to be approved pursuant to the provisions of this chapter or under any contract or law, shall prescribe within a term of one (1) year."  Id. (emphasis added).  The unclarity of the

---

[2] There is no dispute that § 185*l*'s limitations period applies only to claims for "discharge without just cause" and not to all claims arising under Title 29.  29 L.P.R.A § 185*l* (titled "Indemnity for discharge without just cause—Prescription of rights.").

statute is amplified by the fact that it was originally authored in Spanish and translated into English. Because § 250j is subject to more than one reasonable interpretation, it is ambiguous,[3] meaning that evidence of legislative intent may inform the court's construction. Lee v. Norfolk S. Ry. Co., 802 F.3d 626, 631 (4th Cir. 2015) ("[I]f the text of a statute is ambiguous," courts should "look to other indicia of congressional intent such as the legislative history to interpret the statute.").

The intent of the Legislative Assembly of Puerto Rico on this front is clear. LMD has presented a document titled "Guidelines for Interpretation of Puerto Rican Labor Laws" (the "Guidelines"), which the Puerto Rico Department of Labor and Human Resources (the "Agency") issued on May 8, 2019. ECF No. 20-3.[4] The Agency takes LMD's view of § 250j, stating that the statute[5] "establishes that any wage claims that an employee may make under this Law, a contract or any other law will have a statute of limitations of one [] year from the date the employee ceases to work for the employer." Id. at 2. The Guidelines go on to explicitly clarify that "the application of the limitation

---

[3] Even if § 250j's language is not ambiguous on its face, the court would not be bound by plaintiff's construction because, as the court explains below, it is "demonstrably at odds" with clearly expressed legislative intent. Sigmon Coal Co. v. Apfel, 226 F.3d 291, 304 (4th Cir. 2000), aff'd sub nom. Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002); see also Garcia v. United States, 469 U.S. 70, 75 (1984) (finding that in "rare and exceptional cases" the court may use the legislative history to interpret unambiguous language).

[4] As an official government document, the court may take judicial notice of the Guidelines. See Shore v. Charlotte-Mecklenburg Hosp. Auth., 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019). The Guidelines themselves are printed in Spanish, but LMD has provided the court with an English translation from a United States court-certified interpreter. ECF No. 20-3 at 7. Plaintiffs have not doubted the accuracy of the translation, and the court likewise has no reason for doubt.

[5] Throughout the Guidelines, the Agency refers to the statutory provisions according to an alternative codification system and therefore refers to 29 L.P.R.A. § 250j as "Article 12 of Law 108-1998." Nevertheless, the Agency's meaning is clear, as it cites to § 250j throughout its discussion of the statute of limitations. ECF No. 20-3 at 2–6.

period provided by [§ 250j] extends to wage claims under any other law or an

employment agreement." Id. at 6. The accompanying footnote provides:

> The Statement of Legislative Intent of Law 80-2000, which amended
> [§ 250j], states, "It has been public policy that all wage claims, whether
> relating to minimum wage, sick or vacation leave, overtime, meal breaks,
> working on a rest day or a legal holiday, have the same limitation period.
> This was so stated in Law No. 96. Otherwise, there would be no uniformity
> and the processing of wage claims would be greatly complicated, and the
> situation would lend itself to confusion for both employees and employers."

Id. at 6 n.79. The succeeding footnote provides further evidence of the legislative intent

undergirding § 250j:

> Regarding the absence of provisions on the statute of limitations in other
> labor laws, the Statement of Legislative Intent of Law 80-2000 . . . states
> that: "To cover that lacuna of Law No. 180, the Legislative Assembly of
> Puerto Rico seeks to clarify that, for the processing of any action that an
> employee may have against their employer to claim all wages, overtime,
> vacation and sick leave, penalty for working during meal breaks, and others
> to which they may be entitled because of their work, regardless of the origin
> thereof, will be governed by the limitation period established in the
> aforementioned [§ 250j]."

Id. at 6 n.80.

This evidence demonstrates clearly and unequivocally that the Legislative

Assembly of Puerto Rico intended the limitations period codified in § 250j to cover all

wage claims arising from Title 29. Several Puerto Rican courts facing this issue have

reached the same conclusion. Acevedo Arocho v. Departamento De Hacienda, 2020 WL

1288548 at *15–16 (P.R. Cir. Jan. 30, 2020) (holding that §250j's limitations period

applies to all wage claims arising under Title 29 based on the Legislative Assembly of

Puerto Rico's statement of legislative intent); Rossello v. Avon Prod., Inc., 2015 WL

3890403 at *15 (D.P.R. June 24, 2015) (holding, without analysis, that § 250j's

limitations period applied to the plaintiffs' wage claims); In re Hosp. De Damas,

Inc. (Bankr. D.P.R. 2014) ("Since [29 L.R.P.A. § 283] does not contain a statute of limitations to claim the statutory penalty, the applicable limitations period, as explained by the Puerto Rico Legislature, is the one provided by [§ 250j.]").

Plaintiffs further argue that LMD's construction of § 250j—that it applies to all of Title 29—would render § 185*l* superfluous. Section 185*l* sets a one-year statute of limitation for unlawful discharge claims, which fall under Title 29. According to plaintiffs, if § 250j were meant to apply to all of Title 29, § 185*l* would be redundant. As plaintiffs point out, the court should "avoid any interpretation that may render statutory terms meaningless or superfluous." Scott v. United States, 328 F.3d 132, 139 (4th Cir. 2003). While plaintiffs are correct on that fine point, the "canon against surplusage is not an absolute rule" and loses force where the language rendered superfluous is contained in a separate statute. Marx v. Gen. Revenue Corp., 568 U.S. 371, 385 (2013). In short, the canon against surplusage cannot overcome § 250j's clear ambiguity and the overwhelming evidence of legislative intent for it to apply comprehensively to all wage claims arising under Title 29.

Moreover, even if the language of § 250j does not explicitly extend its one-year limitations period to all wage claims arising under Title 29, that limitations period would nonetheless govern plaintiffs' wage claims by analogy. Under Puerto Rico law, where a statute does not prescribe a statute of limitations for a right created thereunder, courts enforce the limitations period of the most closely analogous statute. Olmo v. Young & Rubicam of P.R., Inc., 110 P.R. Dec. 740, 745 (1981) ("Since the statute does not fix the prescriptive term, we must use the most analogous one[.]"); see also Matos Ortiz v. Com. of Puerto Rico, 103 F. Supp. 2d 59, 63 (D.P.R. 2000) (collecting cases). Here, there can

be no doubt that § 250j provides the "most analogous" limitations period for the remainder of plaintiffs' Puerto Rico law claims. As discussed above, § 250 creates rights for workers related to minimum wage, vacation, and sick leave. Plaintiffs' remaining Puerto Rico law claims seeks to enforce closely related worker's rights concerning overtime pay, Christmas bonuses, and allotted meal periods. Compl. ¶¶ 64–72. As discussed above, the statutes creating each of these rights falls under Title 29. Therefore, in the absence of an explicitly prescribed limitations period, the court would apply to plaintiffs' remaining Puerto Rico law claims the limitations period codified in § 250j, as the "most analogous" statute of limitations. The Guidelines likewise note that § 250j's limitations period may be applied to all wage claims by analogy:

> [B]y analogy, the limitation period of [§ 250j] applies to claims relating to: minimum wage, sick or vacation leave, overtime, meal breaks, work on rest days, payment of the statutory Christmas bonus in the private sector, wages owed, and other claims to which employees may be entitled as a result of their work, subject to the specific remedies and provisions of the law concerned.

ECF No. 20-3 at 6. In sum, whether by explicit legislative direction or by analogy, Puerto Rico law compels the court to apply a one-year limitations period to all plaintiffs' Puerto Rico law claims.[6]

### C. Class Action Tolling

Next, plaintiffs argue that even if a one-year limitations period were to govern their Puerto Rico law claims, the claims are nevertheless timely because the limitations period has been tolled since December 14, 2018, the date on which Ojeda filed the initial

---

[6] Tellingly, while plaintiffs vigorously contend that § 250j's one-year limitations period does not apply to their Puerto Rico law claims, they fail to even suggest what limitations period would apply instead.

complaint against Louis Berger in the New Jersey Action.  While the filing of the New

Jersey Action operated to toll the claims initially alleged against the defendants therein,

plaintiffs did not file the instant claims against LMD until much later, after the limitations

period expired.  Therefore, plaintiffs' argument is inapposite.

As the court noted above, Hernandez-Adorno stopped working for LMD in

January 2018, Compl. ¶ 8, and plaintiffs did not assert any claims against LMD until

March 2019, ECF No. 13-2.  Plaintiffs argue that their claims are nevertheless timely,

relying on the well-settled doctrine established by the United States Supreme Court in

Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 554 (1974).  But that law simply has no

application here.  Under American Pipe, "the commencement of a class action suspends

the applicable statute of limitations as to all asserted members of the class who would

have been parties had the suit been permitted to continue as a class action."  414 U.S. at

554.  This toll remains in effect "until class certification is denied," at which point "class

members may choose to file their own suits or to intervene as plaintiffs in the pending

action."  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354 (1983).  In other words,

when a class action is pending, the law tolls the claims of the prospective class members

so that, in the event the court denies class certification, members of the failed class may

subsequently assert individual claims without fear that the claims may have expired

during the pendency of the class action.

That law is simply inapplicable here because plaintiffs failed to file any claims

against LMD until after the expiration of the one-year limitations period.  The American

Pipe doctrine operates to toll claims timely asserted in a class action, but it has no effect

on claims—such as plaintiffs' claims against LMD—that were not timely filed in the first

14

place.  Put another way, the fact that the plaintiffs timely asserted claims against Louis

Berger in the New Jersey Action does nothing to redeem plaintiffs' subsequent, untimely

claims against LMD.

The Supreme Court made clear in <u>American Pipe</u> that the class-action tolling

mechanism applies only to claims timely asserted against a defendant in a class action:

> [S]tatutory limitation periods are designed to promote justice by preventing
> surprises through the revival of claims that have been allowed to slumber
> until evidence has been lost, memories have faded, and witnesses have
> disappeared.  The theory is that even if one has a just claim it is unjust not
> to put the adversary on notice to defend within the period of limitation and
> that the right to be free of stale claims in time comes to prevail over the right
> to prosecute them.  The policies of ensuring essential fairness to defendants
> and of barring a plaintiff who has slept on his rights are satisfied when, as
> here, a named plaintiff who is found to be representative of a class
> commences a suit and thereby notifies the defendants not only of the
> substantive claims being brought against them, but also of the number and
> generic identities of the potential plaintiffs who may participate in the
> judgment.  <u>Within the period set by the statute of limitations, the defendants
> have the essential information necessary to determine both the subject
> matter and size of the prospective litigation</u>, whether the actual trial is
> conducted in the form of a class action, as a joint suit, or as a principal suit
> with additional intervenors.

414 U.S. at 554–55 (internal citations and quotation marks omitted) (emphasis added).  A

defendant's "right to be free of stale claims," on which the Supreme Court relied in

<u>American Pipe</u>, would be entirely undermined if the tolling mechanism granted class-

action plaintiffs carte blanche to untimely join additional defendants after the expiration

of the appliable limitations period.  <u>Id.</u> at 554.  Obviously, a defendant added to a lawsuit

after the expiration of the limitations period would lack timely notice of the "substantive

claims brought against [hi]m."  <u>Id.</u> at 555.  In short, <u>American Pipe</u> cannot save plaintiffs'

untimely claims against LMD.

### D.  Relation Back

In one final attempt to avoid dismissal of their Puerto Rico law claims, plaintiffs contend that those claims "relate back to the [o]riginal [c]omplaint" filed in the New Jersey Action, pursuant to Puerto Rico's doctrine of solidarity.[7]  ECF No. 13 at 13.  That doctrine, as plaintiffs tell it, "allows a plaintiff to amend a complaint to include joint tortfeasors not originally included in the complaint so long as the [amended] complaint was timely filed and the element of solidarity was well pled."  ECF No. 13 at 14 (quoting Gonzalez-Madera v. De Jesus, 2010 WL 215339 at *3 (D.P.R. Jan. 20, 2010)) (alteration in original).  But Puerto Rico's doctrine of solidarity is more complex than plaintiffs let on.  Having delved deep into Puerto Rican law, the court concludes that the doctrine of solidarity does not apply here, meaning that plaintiffs' Puerto Rico law claims against LMD do not receive the benefit of tolling.  Reaching that conclusion requires some unpacking.

In support of its comparably simplistic view of the doctrine of solidarity, plaintiffs cite to four cases: Gonzalez-Madera, 2010 WL 215339 at *3; Rivera v. Alvarado, 240 F. Supp. 2d 136, 141 (D.P.R. 2003); Garcia Perez v. Corp. Serv. Mujer, 174 P.R. Dec. 138, 166 (P.R. 2008); and Tokyo Marine & Fire Ins. Co. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d 1, 4 (1st Cir. 1998).  Each of those cases relies on the linchpin doctrine-of-solidarity case from the Supreme Court of Puerto Rico: Arroyo v. Hosp. La Concepcion, 130 P.R. Dec. 596, 599 (P.R. 1992) (official English translation available at 1992 WL 755630), a case conspicuously absent from plaintiffs' briefs.  In that 1992 case, the

---

[7] Fed. R. Civ. P. 15(c)(1)(A) permits relation back where "the law that provides the applicable statute of limitations allows relation back."

16

Supreme Court of Puerto Rico held that a plaintiff's assertion of a claim against one joint tortfeasor tolls the limitations period with respect to other joint tortfeasors, such that where a plaintiff files a timely claim against one tortfeasor, he is permitted to untimely file a claim against another.  Id. at 599.  The doctrine applies, the court held, so long as a new defendant is "solidarity liable for the damages claimed against the original defendant[.]"  Id.  In 2012, however, the Supreme Court of Puerto Rico explicitly "revoke[d] the rule" espoused in Arroyo and established a different, albeit closely related, solidarity doctrine.  Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 P.R. Dec. 365 (P.R. 2012); ECF No. 26-1.[8]

In Fraguada, the Supreme Court distinguished between two types of solidarity: perfect and imperfect.  "Perfect solidarity" exists between co-tortfeasors that are "joined by a common interest, have frequent contact, or know each other."  ECF No. 26-1 at 20. "Imperfect solidarity," on the other hand, exists only "when the law establishes it between [co-tortfeasors] who do not know each other, are only accidental co-tortfeasors or whose contacts are sporadic."  Id.  Where perfect solidarity exists, a plaintiff's assertion of a claim against one co-tortfeasor tolls the statute of limitations period with respect to a claim against another co-tortfeasor.  Where solidarity between co-tortfeasors is imperfect, however, "timely filing of a complaint against a . . . co-tortfeasor does not toll the statute of limitations against the rest of the alleged tortfeasors."  Id. at 12.

_____

[8] At the court's request, LMD submitted an English translation of Fraguada, completed by Juan E. Segarra, a certified United States Courts translator.  Plaintiffs do not contest the accuracy of the translation, and the court has no reason to doubt it.  For ease of reference, the court's citations to Fraguada include reference to the court's translation located at ECF No. 26-1.

In Puerto Rico, the issue of perfect solidarity parallels the more familiar doctrine of vicarious liability.  See Ramirez-Ortiz v. Corporacion Del Centro Cardiovascular De Puerto Rico y Del Caribe, 994 F. Supp. 2d 218, 224 (D.P.R. 2014).  That is to say, perfect solidarity exists where a newly added defendant is vicariously liable for the torts of an existing defendant.  In other words, a plaintiff's assertion of a claim against a defendant tolls the statute of limitations with respect to any co-defendants that could be held vicariously liable for the initial claim.  For example, a plaintiff's medical malpractice claim against a negligent doctor would operate to toll the statute of limitations for a claim against the hospital that employed the doctor because the latter is vicariously liable for the former's torts.  Id. ("The Court finds that a perfect solidarity obligation arises in medical malpractice cases where a hospital and physician are jointly liable for a physician's negligent care pursuant to [31 L.R.P.A. § 5142]'s vicarious liability doctrine."); Kenyon v. Gonzalez-Del Rio, 115 F. Supp. 3d 268, 270 (D.P.R. 2015) (same).

But the same cannot be said with respect to the inverse.  A plaintiff's claim against one defendant does not toll the statute of limitations with respect to a co-tortfeasor where the original claim is asserted against the vicariously liable party.  Employing the same hypothetical used above, a plaintiff's medical malpractice claim against a hospital would not toll the statute of limitations with respect to a claim against the negligent doctor because the doctor cannot be held vicariously liable for the torts of the hospital.  In other words, the doctrine of solidarity—like vicarious liability—does not flow upstream.  Such was the case in Fraguada itself, the very case that established Puerto Rico's new solidarity doctrine.  There, the plaintiffs filed a medical malpractice

2:21-cv-01519-DCN    Date Filed 08/06/21    Entry Number 27    Page 19 of 21

action against a hospital and several allegedly negligent doctors.  ECF No. 26-1 at 1–2.

Years later, the plaintiffs added another doctor to the lawsuit, arguing that their original

claim tolled the limitations period under the doctrine of solidarity.  Id.  The Supreme

Court of Puerto Rico found those new claims against the doctor to be untimely, holding:

> In spite of having knowledge of [their claim against the new doctor], the
> plaintiffs did not include [him] in their original complaint.  More so, they
> decided to do so six years later, an act which shows their neglect and
> abandonment of said claim.  Therefore, under the rule adopted today, the
> plaintiffs should have filed an individual claim against [the new doctor] as
> the alleged joint and several co-tortfeasor within the statute of limitations
> of one year provided [by law], which started running as soon as they learned
> of the injury, the identity of the tortfeasor, and the necessary elements to
> exercise the cause of action.

ECF No. 26-1 at 11.[9]  A district court in a more recent Puerto Rico case reached the same

conclusion, finding that the doctrine of solidarity did not apply where the plaintiff

asserted a claim against a hospital first and subsequently asserted an untimely claim

against his doctor.  Tonge v. Doctors' Ctr. Hosp., 2021 WL 1923727, at *7 (D.P.R. Mar.

31, 2021).  The court noted that the doctrine of solidarity tolls the limitations period

where a newly added defendant is vicariously liable for the original claim.  Id.  Then, the

court explained that the doctrine does not apply when the roles are reversed, finding that

the plaintiff's claim against the hospital did not toll a subsequent claim against his doctor.

Id. ("Here, however, the issue is backwards . . . .").

That logic easily extends to the circumstances here.  According to plaintiffs'

complaint, Louis Berger, the original defendant, is a general contractor who engaged

LMD to be its subcontractor.  At this stage, the court cannot discern the nature of the

---

[9] Nevertheless, the Supreme Court of Puerto Rico allowed the untimely claim
against the doctor to survive, holding that justice required the court to give its newly
announced rule prospective effect only.  ECF No. 26-1 at 11.

relationship between Louis Berger and LMD, meaning that it is unclear whether Louis Berger could be held vicariously liable for LMD's torts. But the court does not need to determine the exact nature of the relationship to find that perfect solidarity does not exist in this case. As the court explained above, a plaintiff's claim against one defendant does not toll the statute of limitations with respect to co-tortfeasor where the original claim is asserted against the vicariously liable party. Just as a claim originally brought against a hospital does not toll the limitations period for a claim against the hospital-employed doctor, Ojeda's filing of the New Jersey Action against Louis Berger does not toll the limitations period with respect to claims against LMD, Louis Berger's subcontractor. Therefore, even assuming that Louis Berger could be held vicariously liable for LMD's torts, the original claim against Louis Berger did not toll the limitations period with respect to the instant claims against LMD. Thus, Louis Berger and LMD are not in perfect solidarity, meaning that Puerto Rico law did not toll plaintiffs' claims.

Plaintiffs' Puerto Rico law claims, then, are left unredeemed by any tolling doctrine and must be dismissed as untimely pursuant to the applicable one-year limitations period. Plaintiffs' FLSA claims, on the other hand, survive.

## IV.   CONCLUSION

For the foregoing reasons the court **CONSTRUES** LMD's motion as a motion for

partial judgment on the pleadings and **GRANTS** the motion.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 6, 2021**
**Charleston, South Carolina**